**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CAROLINE B. DENNIS, | CASE NO. 3:13-cv-02537-CCC-GBC |
| Plaintiff, | (CHIEF JUDGE CONNER) |
| v. | (MAGISTRATE JUDGE COHN) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO VACATE THE DECISION OF THE COMMISSIONER AND REMAND FOR FURTHER PROCEEDINGS |
| Defendant. | |
| | Docs. 1, 11, 12, 16, 17 |

## REPORT AND RECOMMENDATION

### I.     Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Caroline B. Dennis for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). The ALJ must craft a residual functional capacity ("RFC") assessment based on medical evidence, but may not base the RFC by substituting lay inferences for that of a competent medical professional. Consequently, RFC assessments in excess of all medical opinions generally lack substantial evidence. Here, Plaintiff's treating physician and the state agency consultative examiner both opined that Plaintiff

could not perform even sedentary work, but the ALJ concluded that she could perform a range of sedentary work full time. Plaintiff's activities of daily living were severely limited and objective evidence supported her claims, so the ALJ's assessment of Plaintiff's RFC in excess of all of the medical opinions lacks substantial evidence. As a result, the Court recommends that Plaintiff's appeal be granted, the decision of the Commissioner be vacated, and the matter be remanded for further proceedings.

## II.    Procedural Background

On March 10, 2011, Plaintiff filed an application for SSI under the Act. (Tr. 90-96). On June 2, 2011, the Bureau of Disability Determination denied this application (Tr. 65-77), and Plaintiff filed a request for a hearing on July 15, 2011. (Tr. 115-16). On April 19, 2012, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 30-63).   On July 2, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 10-29).   On August 13, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 8-9), which the Appeals Council denied on September 12, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-6).

On October 9, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On February

15, 2014, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 11, 12). On April 23, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 16). On April 30, 2014, the Court referred this case to the undersigned Magistrate Judge. On May 21, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 17). On July 14, 2014, Plaintiff notified the Court that she would not be filing a brief in reply. (Doc. 20). The matter is now ripe for review.

### III.    Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and requires only "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### IV.    Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520.   The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the

claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").   20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## V. Relevant Facts in the Record

Plaintiff was born on January 27, 1964 and was classified by the regulations as a younger individual through the date of the ALJ decision. 20 C.F.R. § 404.1563. (Tr. 25). Plaintiff has at least a high school education and past relevant work as a telemarketer. (Tr. 25).

On December 2, 1990, Plaintiff suffered a head injury in a motor vehicle accident. (Tr. 188, 245). Her boyfriend died and her ten-month old son suffered a spinal cord injury. (Tr. 245, 252). She was hospitalized at Community Medical

Center through December 20, 1990, and was not aware of the death of her boyfriend or the injury to her child. (Tr. 252). On December 20, 1990, Plaintiff was transferred to the John Heinz Institute of Rehabilitation Medicine. (Tr. 252). Notes indicate that:

> CAT scan showed an area of intracerebral hemorrhage in the area of the intraventricular septum... Repeat CAT scan showed resolution of this area of hemorrhage, however, small bilateral frontal subdural hygromas appeared which were stable in size on repetitive studies.

(Tr. 252). "X-rays showed compression fractures of several vertebrae but there is a note in the chart secondary to a remote motorcycle accident." (Tr. 252). Plaintiff remained hospitalized through March 1, 1991. (Tr. 245). Notes indicate that Plaintiff's "hospital course was complicated by behavioral abnormalities and complaints of a great deal of pain." (Tr. 246). "She appeared to have no functional deficits in cognitive or perceptual areas at the time of discharge from occupational therapy." (Tr. 248). At the time of discharge, medication was not prescribed, she was scheduled for physical therapy, and her prognosis was "good" from a physical standpoint. (Tr. 248). She had reached her premorbid level of cognitive functioning. (Tr. 248). Her prognosis with regard to substance abuse was guarded in view of the "multiple personal problems she must deal with following discharge." (Tr. 248). Plaintiff continued rehabilitation through September of 1991, when she was seen at the John Heinz Institute of Rehabilitation Medicine. (Tr. 607).

The administrative transcript does not contain any additional records until February 9, 1999, when Plaintiff was evaluated at Scranton Counseling Center. (Tr. 203). Plaintiff reported depression, but "denie[d] any current major medical problems" and did not "have a family physician." (Tr. 203).  The record does not contain any subsequent records until April 25, 2008, when she had a CT scan of her head that indicated a "retention cyst right maxillary sinus" but "no additional pathology." (Tr. 184).

On September 30, 2008, Plaintiff followed-up with her primary care physician, Dr. John J. Cipriano. (Tr. 177). Plaintiff complained of pain and weakness in her left leg. (Tr. 177). He observed abnormal reflexes and decreased strength in her legs. (Tr. 177). On October 7, 2008, she had an MRI of her lumbar spine after complaining of lower back pain extending into her legs, worse in the right leg. (Tr. 183). The MRI indicated "minimal" and "small" disc bulges and "small" osteophytes. (Tr. 183). She also had facet hypertrophy and a "small bright signal region" that was "consistent with hemangiomas." (Tr. 183). Plaintiff continued to complain of back and leg pain on March 4, 2009, and also carried a diagnosis of chronic obstructive pulmonary disease ("COPD"). (Tr. 174-75). On March 26, 2010, Plaintiff reported to Dr. Cipriano that she may have had a seizure. (Tr. 173). Dr. Cipriano's notes are handwritten and generally difficult to decipher. (Tr. 170-77).

On March 3, 2011, Dr. Cipriano completed an Employability Assessment Form for the Pennsylvania Department of Public Welfare that indicated that Plaintiff was "permanently disabled" as a result of multilevel degenerative disc disease. (Tr. 186).

On April 14, 2011, Plaintiff submitted a Function Report. (Tr. 141-48). Plaintiff reported that she lived alone (Tr. 141). She had problems lying because she "cannot lie in the same position" and indicated no problem with personal care. (Tr. 142-43). She cooked her meals once a week so that she could microwave them and reported problems cooking meals from scratch. (Tr. 143). She indicated that she did housework, but had to take breaks. (Tr. 143). She indicated that she went outside every day "weather permitting to drink in the sun and love [her] plants." (Tr. 144). She reported that she did not drive and shopped in stores bi-weekly for forty-five minutes when her "friend takes [her]." (Tr. 144). She reported that she crocheted and watched television, but was no longer able to garden. (Tr. 145). She indicated that she attended church most Sundays, but needed someone to accompany her. (Tr. 145). She reported that she spends time with others on the computer and when others come to visit. (Tr. 145). She explained that her ability to participate in social activities was affected by getting "very tired easily" and ankle swelling that required elevating her legs. (Tr. 146). She reported that she had problems lifting, squatting, bending, standing, reaching, walking, sitting, kneeling,

stair climbing, seeing, memory, completing tasks, and concentration. (Tr. 146). She indicated that she could walk two blocks before needing to stop and rest, "sometimes" finishes what she starts, and was able to follow instructions. (Tr. 146). She reported that she gets along with authority figures "fine" and had never been fired from a job due to difficulties interacting with others, but did not handle stress "very well" and "can't stand" changes in routine. (Tr. 147). She indicated that she uses a crutch, cane, and glasses "periodically-daily." (Tr. 147). She reported fatigue "24/7" due to COPD and pain in her lower back and right leg that "doesn't stop." (Tr. 149-50).

On May 19, 2011, Plaintiff had a consultative examination with Dr. Lee Besen, M.D. (Tr. 188). On examination, Plaintiff was "alert" and "oriented," but [had] some difficulty maintaining a confluent conversation." (Tr. 190). "Her thought process seem[ed] a little bit impaired." (Tr. 190). She had "mild venous insufficiency noted." (Tr. 191). Her gait, weightbearing, and sensation were normal. (Tr. 191). She had decreased strength and brisk reflexes. (Tr. 191). She had a "little bit of diffuse tenderness" in her lower back and her straight leg raise was "unremarkable." (Tr. 191). Plaintiff had decreased range of motion in her elbow, knee, and lumbar spine. (Tr. 195-96). Dr. Besen opined that she would be unable to perform sedentary work, as she could stand or walk for one hour or less a day and sit for less than six hours a day. (Tr. 193).

On July 28, 2011, Plaintiff was evaluated at Northeastern Rehabilitation Services by Dr. John Chun, D.O. after being referred by Dr. Cipriano. (Tr. 225-235). Plaintiff reported lumbar back pain that radiated to her lower extremities. (Tr. 232). She was taking Hydrocodone twice per day and Cyclobenzaprine twice per day. (Tr. 232). She reported that her pain was aggravated by bending, standing, walking, sitting, and lying on her back and caused significant sleep disturbance. (Tr. 232). Plaintiff's transfers and gait pattern were "slow and guarded." (Tr. 233). She was not using an assistive device. (Tr. 233). She had "mildly restricted" range of motion in her lumbar spine. (Tr. 233). Straight leg raise testing was positive at fifteen degrees. (Tr. 233). "[B]ilateral lumbar facet joint loading test bilaterally" and "trigger point bilateral" testing was positive. (Tr. 233). She had "painful taut muscle band/spasm," referred pain, and "diffuse pain to palpation." (Tr. 233). She had restricted range of motion in her hips. (Tr. 233). Her neurologic examination was normal. (Tr. 233). Plaintiff was scheduled for an X-ray and physical therapy. (Tr. 233). She received a trigger point injection, was prescribed Meloxicam, and her other medications were continued. (Tr. 234). She was to follow-up in four weeks for consideration of epidural steroid injection. (Tr. 234).

On March 30, 2012, Plaintiff presented to the Pain Clinic at Community Medical Center for evaluation of low back pain. (Tr. 648). She reported severe pain in her low back that was exacerbated by sitting for long periods of time. (Tr.

648). She used a cane for balance and limped without using her cane. (Tr. 648). An MRI of Plaintiff's back was "positive for multilevel disk bulge with some right L4 neuroforaminal narrowing." (Tr. 649). Plaintiff's thoracic spine and sacroiliac joint were tender and her lumbar spine was "significantly tender." (Tr. 649). She had decreased reflexes in both lower extremities and her straight leg raise was positive at twenty degrees. (Tr. 649). Her bicep and tricep reflexes were abnormal. (Tr. 649). Her hip joint was tender. (Tr. 649). She had "basically normal" range of motion. (Tr. 649). She received a trigger point injection. (Tr. 649).

On April 19, 2012, Plaintiff appeared and testified at a hearing before the ALJ. (Tr. 32). Plaintiff testified that she was unable to do her own cleaning, cooking, and shopping. (Tr. 38). She testified that she goes to church on Fridays and Sundays. (Tr. 39). She reported that she uses a cane that had been prescribed "all the time." (Tr. 40). Plaintiff was unable to provide a consistent time frame for when she had last driven or used illicit substances, explaining that  she was not "real good with time frames." (Tr. 41-43). She testified that she did not remember what year she worked at Burger King. (Tr. 44). She testified that she was "confused" and was not able to indicate when she had been incarcerated. (Tr. 45). She reported that she stopped crocheting "when [her] hands stopped working?" (Tr. 47). She testified that she had a daughter who was disabled, but she no longer lived with her. (Tr. 50). She testified that she had last been seen at Scranton

Counseling in 1993, although the administrative transcripts contains records from Scranton Counseling through 2011. (Tr. 51). She explained that her "head has been hit a few times…I don't do numbers, it's hard." (Tr. 51). She testified that she did not remember when she had last seen a therapist or psychiatrist and did not know why she stopped going to Scranton Counseling. (Tr. 52). She testified that she could not work full-time because there are "too many days in a row where [she] can hardly move" and "sometimes [she] can hardly get off the couch." (Tr. 53). She reported that she could not lift more than four or five pounds, and would have to lift with "her arms, not her hands." (Tr. 54). The ALJ asked her about pain in her neck, and she responded, "If I could get that sticky thing, maybe that could help?" The ALJ responded, "[a]re you talking about the TENS unit?" and she replied, "[y]es, please." (Tr. 54). She reported that sitting was "very difficult," she could only sit for ten minutes at most, and could not bend her back when she was sitting. (Tr. 55). She testified that her sleep was "horrible." (Tr. 55).

A vocational expert ("VE") also appeared and testified. (Tr. 56). The VE testified that, given the ALJ's RFC described below, Plaintiff could perform work as a as an order clerk, video monitor, and document preparer. (Tr. 61). The VE also testified that, if Plaintiff would be off-task for thirty percent of the day, there would be no work she could perform. (Tr. 62).

On April 24, 2012, Plaintiff followed-up with the Pain Clinic. (Tr. 659). She had "significant tenderness" in her lumbar spine and sacroiliac joint. (Tr. 659). She had decreased reflexes and a positive straight leg raise. (Tr. 659). She received an injection into her sacroiliac joint. (Tr. 660).

On July 2, 2012, the ALJ issued the decision. (Tr. 26). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 26, 2011, the application date. (Tr. 15). At step two, the ALJ found that Plaintiff's obesity; degenerative disc disease of the lumbar spine; leg length discrepancy; status-post history of multiple traumas, including a dose head injury secondary to a motor vehicle accident on December 2, 1990; arithmetic developmental disorder; chronic obstructive pulmonary disease (COPD) with continued nicotine usage; and history of major depressive disorder were medically determinable and severe. (Tr. 15). At step three, the ALJ determined that, as of Plaintiff's date last insured, he did not meet or equal a Listing. (Tr. 16). The ALJ found that Plaintiff had the RFC:

> [T]o perform work that is no more than the sedentary exertional level as defined in 20 CFR 416.967(a), however, her ability to work at that level is reduced in that she would be limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling crouching, crawling, and climbing on ramps and stairs, but must avoid occupations that require climbing on ladders, ropes and scaffolds. She must avoid occupations that require pushing and pulling with the lower tight extremity, to include the operation of pedals. She must avoid concentrated, prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, cold temperature extremes, vibration, and extreme dampness and humidity. She would be limited to occupations that do

not require exposure to hazards, such as dangerous machinery and unprotected heights. She would be limited to occupations requiting no more than simple, routine tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes. She would be limited to occupations which require no complex mathematical calculations, such as cashier or teller work. The claimant is limited to occupations that can he performed with the use of a cane.

(Tr. 18-19). At step four the ALJ found that Plaintiff could not perform her past relevant work. (Tr. 25). At step five, the ALJ found that Plaintiff could perform other work in the national economy, such as an order clerk, video monitor, and document preparer. (Tr. 26). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 26).

### VI.      Plaintiff Allegations of Error

### A.      RFC assessment

Plaintiff asserts that the ALJ's RFC assessment lack substantial evidence because all of the medical opinions in the record indicated that Plaintiff was incapable of even sedentary work. (Pl. Brief at 4). Defendant responds that the "final responsibility for determining a claimant's RFC is reserved to the Commissioner, who does not give any special significance to an opinion on this issue. (Def. Brief at 23) (citing 20 C.F.R. § 416.927(d)(2)-(3)). Defendant asserts that the ALJ properly assigned little weight to both medical opinions for various reasons. (Def. Brief at 18-23).

An ALJ must weigh medical opinions in making an RFC assessment. The social security regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is to be given controlling weight. 20 C.F.R. § 416.927(d)(2).  Section 404.1527(c) establishes the factors to be considered by the ALJ when the opinion of a treating physician is not given controlling weight. Under subsections (c)(1) and (c)(2), the opinions of treating physicians are given greater weight than opinions of non-treating physicians and opinions of examining physicians are given greater weight than opinions of non-examining physicians, as discussed above. Section 404.1527(c)(2) also differentiates among treating relationships based on the length of the treating relationship and the nature and extent of the treating relationship. Subsection 404.1527(c)(3) provides more weight to opinions that are well supported, which means that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." Subsection 404.1527(c)(4) states that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." Subsection 404.1527(c)(5) provides more weight to specialists, and subsection 404.1527(c)(6)

allows consideration of other factors which "tend to support or contradict the opinion."

In *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000), the Third Circuit set forth the standard for evaluating the opinion of a treating physician, stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer [v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones,* 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585. The ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer,* 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. See *Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

*Id.* at 317-318.

Generally, an ALJ may not reject all of the medical opinions in the record and assess an RFC that is greater than found by the medical professionals. As Courts in this District have repeatedly emphasized:

> The Court recognizes that the residual functional capacity assessment must be based on a consideration of all the evidence in the record, including the testimony of the claimant regarding her activities of daily living, medical records, lay evidence and evidence of pain. *See*

> *Burnett v. Commissioner of Social Sec. Admin.,* 220 F.3d 112, 121–
> 122 (3d Cir.2000). However, rarely can a decision be made regarding
> a claimant's residual functional capacity without an assessment from a
> physician regarding the functional abilities of the claimant. *See Doak
> v. Heckler,* 790 F.2d 26, 29 (3d Cir.1986) ("No physician suggested
> that the activity Doak could perform was consistent with the definition
> of light work set forth in the regulations, and therefore the ALJ's
> conclusion that he could is not supported by substantial evidence.");
> 20 C.F.R. § 404.1545(a).

*Gormont v. Astrue*, 3:11-CV-02145, 2013 WL 791455, at *7 (M.D. Pa. Mar. 4, 2013) (Nealon, J.); *see also Bloomer v. Colvin*, 3:13-CV-00862, 2014 WL 4105272, at *5 (M.D. Pa. Aug. 19, 2014) (Jones, J.); *House v. Colvin*, 3:12-CV-02358, 2014 WL 3866072, at *8 (M.D. Pa. Aug. 6, 2014) (Kane, J.); *Muhaw v. Colvin*, CIV.A. 3:12-2214, 2014 WL 3743345, at *15 (M.D. Pa. July 30, 2014) (Mannion, J.). *Maellaro v. Colvin*, 3:12-CV-01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014) (Mariani, J.); *Arnold v. Colvin*, 3:12-CV-02417, 2014 WL 940205, at *4 (M.D. Pa. Mar. 11, 2014) (Brann, J.); *Kaumans v. Astrue*, 3:11-CV-01404, 2012 WL 5864436, at *12 (M.D. Pa. Nov. 19, 2012) (Caputo, J.); *Troshak v. Astrue*, 4:11-CV-00872, 2012 WL 4472024, at *7-8 (M.D. Pa. Sept. 26, 2012) (Munley, J.); *Shedden v. Astrue*, 4:10-CV-2515, 2012 WL 760632, at *11 (M.D. Pa. Mar. 7, 2012) (Rambo, J.); *Duvall-Duncan v. Colvin*, 1:14-CV-17, 2015 WL 1201397, at *11 (M.D. Pa. Mar. 16, 2015) (Conner, C.J.); *McKean v. Colvin*, 1:13-CV-2585, 2015 WL 1201388, at *8 (M.D. Pa. Mar. 16, 2015) (Conner, C.J.);

*Hawk v. Colvin*, 1:14-CV-337, 2015 WL 1198087, at *12 (M.D. Pa. Mar. 16, 2015) (Conner, C.J.).

As Judge Mariani explains in *Maellaro v. Colvin*, 3:12-CV-01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014):

> The ALJ's decision to reject the opinions of Maellaro's treating physicians created a further issue; the ALJ was forced to reach a residual functional capacity determination without the benefit of any medical opinion.
> …
> The ALJ's decision to discredit, at least partially, every residual functional capacity assessment proffered by medical experts left her without a single medical opinion to rely upon. For example, three physicians opined that Maellaro was limited in some way in his ability to stand and/or walk: Dr. Dittman opined that Maellaro could stand/walk for less than one hour, Dr. Singh believed that Maellaro could stand/walk for fewer than two hours, and Dr. Dawson opined that Maellaro could not stand or walk for any length of time. Tr. 183, 211, 223. In rejecting these three opinions, there were no other medical opinions upon which the ALJ could base her decision that Maellaro essentially had no limitations in his ability to stand or walk. Tr. 283. Consequently, the ALJ's decision to reject the opinions of Drs. Singh and Dawson, and the ALJ's determination of Maellaro's residual functional capacity, cannot be said to be supported by substantial evidence.

*Maellaro v. Colvin*, 3:12-CV-01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014). Additionally, when a treating source issues an opinion on an issue reserved to the Commissioner, the ALJ is generally obligated to recontact the treating physician:

> Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules

also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

SSR 96-5p.[1]

Here, the only opinions in the record indicated that Plaintiff could not perform even sedentary work.  (Tr. 186-96). The ALJ rejected both. The ALJ rejected Dr. Besen's findings relating to Plaintiff's functional limitations because his examination findings were "essentially benign and/or normal," his impression/diagnosis was not "conclusive," and he based his assessment on Plaintiff's subjective claims. (Tr. 23). The ALJ rejected Dr. Cipriano's opinion because it was conclusory and on an issue reserved to the Commissioner, did not identify "clinical examination findings or objective evidence," and was inconsistent with the "infrequency of visits that he has with the claimant." (Tr. 23). Thus, he "reach[ed] a residual functional capacity determination without the benefit of any medical opinion." *Maellaro,* 2014 WL 2770717 at *11.

Moreover, an ALJ may not reject a treating physician's opinion on an issue reserved to the Commissioner where the bases of the opinion are not clear, and the ALJ has not made "every reasonable effort to recontact" the treating physician. SSR 96-5p. Here, there is no indication that the ALJ attempted to recontact Dr. Cipriano. Consequently, the ALJ rejected Dr. Cipriano's opinion for the "wrong

---

[1]  "Social Security Rulings…are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(

reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993). The Court also notes that much of Dr. Cipriano's notes were difficult to decipher. (Tr. 170-77). An ALJ should not reject a treating physician's opinion as unsupported by examination findings where those examination findings are illegible. As another District Court has explained:

> Also troubling is the fact that the ALJ's decision to give little weight to Yarus's RFC assessment was based, in part, on the ALJ's assertion that there was "nothing in Dr. Yarus's treatment notes" that supported Yarus's assessment. A.R. at 28… Without a legible copy of Yarus's treatment notes, it was improper for the ALJ to assert that "nothing" in the notes supported Yarus's RFC assessment. *See Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir.2000) ("[I]f the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason *or for the wrong reason."* (emphasis added)).

*Grice v. Astrue*, CIV.A. 12-3502, 2013 WL 2062263, at *3 (E.D. Pa. May 15, 2013).

This is not one of those rare cases when an RFC assessment can be determined without the benefit of a physician's opinion. Objective evidence supported Plaintiff's claims. On September 30, 2008, Dr. Cipriano observed abnormal reflexes and decreased strength in her legs. (Tr. 177). At Plaintiff's May 19, 2011, consultative examination with Dr. Besen, Plaintiff had decreased strength and brisk reflexes. (Tr. 191). Plaintiff also had decreased range of motion in her elbow, knee, and lumbar spine. (Tr. 195-96). On July 28, 2011, Dr. Chun observed Plaintiff's transfers and gait pattern were "slow and guarded." (Tr. 233).

She had "mildly restricted" range of motion in her lumbar spine. (Tr. 233). Straight leg raise testing was positive at fifteen degrees. (Tr. 233). "[B]ilateral lumbar facet joint loading test bilaterally" and "trigger point bilateral" testing was positive. (Tr. 233). She had "painful taut muscle band/spasm," referred pain, and "diffuse pain to palpation." (Tr. 233). She had restricted range of motion in her hips. (Tr. 233). On March 30, 2012, Dr. Chun observed that she used a cane for balance and limped without using her cane. (Tr. 648). An MRI of Plaintiff's back was "positive for multilevel disk bulge with some right L4 neuroforaminal narrowing." (Tr. 649). Plaintiff's thoracic spine and sacroiliac joint were tender and her lumbar spine was "significantly tender." (Tr. 649). She had decreased reflexes in both lower extremities and her straight leg raise was positive at twenty degrees. (Tr. 649). Her bicep and tricep reflexes were abnormal. (Tr. 649). Her hip joint was tender. (Tr. 649). On April 24, 2012, Plaintiff followed-up with the Pain Clinic. (Tr. 659). She had "significant tenderness" in her lumbar spine and sacroiliac joint. (Tr. 659). She had decreased reflexes and a positive straight leg raise. (Tr. 659).

In addition to the objective evidence that supports Plaintiff's claims, the ALJ improperly rejected Dr. Cipriano's opinion "for the wrong reason." *Id.* The ALJ violated a binding SSR that requires him to recontact treating physicians when they issue opinions on issued reserved to the Commissioner. Plaintiff also described severely limited activities of daily living, as discussed above. Consequently, the

ALJ erred in crafting an RFC in excess of all the medical opinions. The Court recommends remand, as the ALJ's assessment of Plaintiff's RFC lacks substantial evidence.

Because the Court recommends remand on these grounds, the Court declines to address Plaintiff's other allegations of error.

## VII.    Conclusion

The undersigned recommends that the Court vacate the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and remand the case for further proceedings.

Accordingly, it is HEREBY RECOMMENDED:

1.    The decision of the Commissioner of Social Security denying Plaintiff's social security disability insurance and supplemental security income benefits be vacated and the case remanded to the Commissioner of Social Security to develop the record fully, conduct a new administrative hearing and appropriately evaluate the evidence.

2.    The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections

which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: March 25, 2015                         _____s/Gerald B. Cohn_____
                                              GERALD B. COHN
                                              UNITED STATES MAGISTRATE JUDGE